NEW YORK ZINC COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36189.    Promulgated November 4, 1932.

*Hugh Satterlee, Esq.,* and *Albert S. Lisenby, Esq.,* for the petitioner.

*Elden McFarland, Esq.,* and *James K. Polk, Esq.,* for the respondent.

#### OPINION.

STERNHAGEN : Respondent determined deficiencies of $5,203.21 and $4,808.37 in petitioner's income taxes for 1925 and 1926, respectively, and a statutory net loss of $6,216.74 for 1924. He allowed petitioner a deduction of $28,957.59 for depletion on zinc ore mined in 1924; in 1925 and 1926 he allowed no such deduction, on the ground that petitioner's 250,000 ton ore reserve of March 1, 1913, had been exhausted and the entire amount of $310,000 representing this item of depletable capital had been recovered. Petitioner assails these deductions as inadequate, claiming that on March 1, 1913, its ore reserves were

greatly in excess of the 250,000 tons determined, and the value thereof greater than $310,000.

Petitioner, a New York corporation, was dissolved in 1930, and the present proceeding is brought by its directors as trustees in dissolution. In December, 1923, it acquired all the property and assumed all the obligations of the Northern Ore Company in a non-taxable exchange of its own shares therefor. Revenue Act of 1926, sec. 204(a). Thereafter and during 1924, 1925 and 1926, Theron I. Crane, who owned all of the Northern Ore Company's shares at the time of the exchange, was petitioner's sole shareholder.

Among the properties passing to petitioner by the exchange of 1923 were the Edwards and Balmat mineral properties, located 12 miles apart in St. Lawrence County, New York. The Balmat mine was undeveloped in 1913 and is not here of interest. The Edwards property comprised three tracts, known as the Brown, White and Brodie properties, containing zinc ore, or sphalerite and pyrites. The Ore Company owned the White tract in fee; it held the Brown tract under a lease running for 40 years from 1903, inclusive of an optional renewal period, and providing for a royalty payment not in excess of 50 cents per ton of concentrate. The Brodie property so acquired by petitioner in 1923 was a large tract, only one part of which had in 1913 been held by the Ore Company under a leasehold term beginning in 1906. This lease ran for 20 years from January 1, 1906, and provided for a royalty of 25 cents per ton of ore extracted, a higher royalty for talc and precious metals, and a minimum annual royalty of $150. This lease was canceled on July 2, 1915, and a new lease covering the same and additional properties of the Brodie tract was made for a period of 20 years and 7 months from June 1, 1915, at an increased minimum annual royalty of $800. The entire Brodie tract, including that covered by the earlier lease as well as that covered by the later lease, was acquired by the Ore Company in fee on March 3, 1920.

After the settlement, in 1911, of protracted litigation, the Ore Company began development, and by March 1, 1913, had contracted for the sale of zinc ore and concentrates to the Grasselli Chemical Company and had a mill under construction. At that date three veins of ore on the Brown and White tracts had been worked—Brown No. 1 and No. 2, 350 and 100 feet, respectively; the White vein, 150 feet—and drifting had been done at various levels to these depths. The developed portions of the Brown veins showed 4 to 6 feet of thickness and 150 to 300 feet of width. No. 1 extended 350 feet along the slope; No. 2, 100 feet. The White vein was twice as thick and

about 200 feet wide; it extended 150 feet along the slope. The Brown and White veins' incline indicated that they would pass at 1,000 and 2,000 feet, respectively, under that portion of the Brodic property not covered by the original lease.

On March 1, 1913, 10,000 tons of ore had been extracted for treatment. The mill, shortly after its completion but before operations had fairly begun, burned in 1914. It was immediately reconstructed and operations were begun in March, 1915. The ore contained 17 per cent zinc, about 75 per cent of which was recoverable, and would yield 1 ton of concentrate to 3,834 tons of crude ore. A ton of concentrate yielded 50 per cent zinc, and cost $17.38 to mine, mill and ship. Pyrites yielded 50 cents per ton of crude ore. The market price of zinc in 1913 was 5.7 cents per pound. The price per ton of concentrate under the Grasselli contract was $33.40. The operating profit per ton of crude ore which mathematically resulted from these agreed figures was $4.68.

In 1916 William S. Pilling, owner of one-half the outstanding shares of the Ore Company, sold them for $300,000 after the declaration of a cash dividend of $120,000 by the company. In 1923 these shares were repurchased by the Ore Company for $294,000.

For the years 1915 to 1917, the Ore Company reported to the Bureau of Internal Revenue its ore reserve of March 1, 1913, as 250,000 tons of the value of $1,000,000. In 1920 it claimed a recomputation of depletion on the ground that the reserves would be exhausted in 1920. In 1920 it reported the 1913 reserve at 250,000 tons and the value thereof at $605,000. New ore was developed between 1920 and 1922 on which the Ore Company claimed discovery value. On one vein the claim was allowed.

From 1913 to 1926 the tonnage mined and shipped from the Edwards property was:

| | Tons | | Tons |
|---|---|---|---|
| 1913 | None | 1921 | 25,006 |
| 1914 | None | 1922 | 45,512 |
| 1915 (March 1 to Sept. 30) | 9,113 | 1923 | 63,659 |
| 1915–1916 (Oct. 1, 1915, to Dec. 31, 1916) | 47,039 | 1924 | 33,184 |
| 1917 | 48,871 | 1925 | 46,965 |
| 1918 | 40,540 | 1926 (to June 26) | 20,683 |
| 1919 | 51,411 | | |
| 1920 | 48,564 | Total | 480,547 |

In 1926 the Edwards mine, mill and plant were sold for $1,427,081.68; in 1928 the Balmat mine was sold for $250,000.

In making the finding as to March 1, 1913, ore content and value of the properties, there is no reason to attempt to set forth either the evidence in the record or an exposition of the considerations, both

ponderable and imponderable, leading to the conclusion that the respondent has recognized as large a value on March 1, 1913, to be used as a depletion base as the petitioner may properly claim. The facts of that period, as distinguished from the surmises, inferences, and opinions drawn from them, are substantially free from controversy. Upon them as premises, the several witnesses for both parties have reached widely divergent and irreconcilable conclusions as to the known and reasonably prospective ore content of the properties and its value. Their opinions as to value vary not only because of the variance in the estimate of content, but also in the method of evaluating the content estimated. There is no reason to disregard the opinions of any of these witnesses. All compel and have been given respectful and careful consideration. It is in the light of all of their views that the duty is upon the Board to consider the facts in evidence and find the ultimate fact of value; and thus we find no preponderance of the evidence to justify, let alone compel, the conclusion that the respondent's determination is erroneously based on an inadequate value of the Northern Ore Company's properties on March 1, 1913. The finding of fact therefore is that the known and probable ore reserve of the Northern Ore Company upon the properties here in question was on March 1, 1913, 250,000 tons, all of which was in the Brown and White tracts, and its fair market value on that date was $310,000.

In accordance with this finding of fact, the determination of the respondent is sustained.

*Judgment will be entered under Rule 50.*